## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**MICHAEL DENNIS NICHOLAS**                                          **PLAINTIFF**

**V.**                                        **NO. 3:23-CV-00186-JTK**

**MARTIN J. O'MALLEY, Commissioner,[1]**
**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

## ORDER

### I.  Introduction:

On November 30, 2020, Plaintiff Michael Nicholas filed an application for Title II

and Title XVI benefits, alleging disability beginning September 1, 2019. (Tr. at 14). His

claim was denied initially and upon reconsideration. *Id.* After a hearing, the Administrative

Law Judge ("ALJ") found that Nicholas was not disabled. (Tr. at 33). The Appeals Council

denied his request for review, and the ALJ's decision now stands as the final decision of

the Commissioner. This Court[2] affirms that decision.

### II.  The Commissioner's Decision:

Following the five-step sequential process,[3] the ALJ first found that Nicholas had

not engaged in substantial gainful activity since September 1, 2019. (Tr. at 16). The ALJ

---

[1]On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2]The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (*Doc. 5*).

[3]The ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the

1

identified the following severe impairments: status-post remote transient ischemic attack, status-post non-ST-elevation myocardial infarction, coronary artery disease ("CAD"), status-post quadruple coronary artery bypass graft surgery, degenerative disc disease with radiculopathy, bilateral carpal tunnel syndrome, Meniere's disease, bipolar disorder, history of chronic obstructive pulmonary disease, and borderline intellectual functioning. (Tr. at 16–17). After finding that Nicholas's impairments did not meet or equal a listed impairment, the ALJ determined that Nicholas had the residual functional capacity ("RFC") to perform work at the light exertional level except that he could not climb ladders, ropes, or scaffolds; that he could not work with unprotected heights; that he could only occasionally balance, stoop, kneel, crouch, and crawl; that he was limited to occasional exposure to dust, smoke, fumes, and other pulmonary irritants; that he could frequently handle and finger; that he could perform simple, routine, and repetitive work with the ability to make simple work-related decisions; and that he could occasionally reach overhead. (Tr. at 18, 21).

The ALJ determined that Nicholas was unable to perform his past relevant work. (Tr. at 31). Relying upon testimony from a vocational expert ("VE"), the ALJ found—based on Nicholas's age, education, work experience, and RFC—that he could perform jobs existing in significant numbers in the national economy, including marker, routing

---

impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)(4).

clerk, and collator operator. (Tr. at 31–32). Consequently, the ALJ concluded that Nicholas was not disabled. (Tr. at 33).

## III. <u>Discussion</u>:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.  Arguments on Appeal

Nicholas argues that the ALJ committed reversible error (1) by failing to resolve a conflict between the VE testimony and the *Dictionary of Occupational Titles* ("DOT") and (2) by finding that Nicholas could perform light work with no additional limitations for standing or walking and with frequent fingering and handling. The ALJ's decision is supported by substantial evidence in both instances.

#### 1.  VE Conflict

Nicholas first asserts that the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding overhead reaching. The hypothetical the ALJ posed to the VE limited overhead reaching to occasional, but the three jobs the VE identified—marker, routing clerk, and collator operator—are listed in the DOT as requiring frequent reaching. Nicholas correctly points out that the ALJ was required to seek an explanation for any conflict between the VE testimony and the DOT. *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); *see also* Social Security Ruling ("SSR") 00-4p.

At the telephone hearing, the ALJ informed the VE that if her testimony differed from the DOT, she had to provide an explanation. (Tr. at 85). The VE noted that "the DOT doesn't address the direction of reaching." (Tr. at 90). However, the VE explained that "with respect to overhead work I am relying on over 35 years of working with employers and people with disabilities matching folks in suitable jobs, conducting labor market research, observing a variety of occupations, as well as supervising and training others in those activities." *Id*. In his decision, the ALJ noted that although the DOT did not address

directional reach, including overhead, the VE testified that all three jobs were compatible with the RFC based on her experience in job placement. (Tr. at 32).

The Eighth Circuit has held that when a VE relies upon her experience with the jobs in question to resolve a potential conflict, that explanation is sufficient. *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 519 (8th Cir. 2019). This Court has recognized that whether a VE has provided a sufficient explanation is often heavily fact dependent. *See Alberda v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00283-JTK, 2021 WL 4239500, at *3 (E.D. Ark. Sept. 17, 2021) (examining cases). "An ALJ needs a solid vocational evidentiary foundation to meet his Step Five burden. And the Court needs to see that foundation before it can decide if the ALJ properly dispatched his duty." *Id.* Where an ALJ fails to recognize a conflict, or simply relies on experience in general, the bar has not been met.[4] In contrast, a VE's testimony about her experience in job placement suffices to resolve a potential conflict.[5] Here, the VE recognized the possible conflict and explained that she was relying on her many years of specific experience matching disabled

---

[4] *Rollins v. Kijakazi*, No. 3:20-cv-00239-PSH, 2021 U.S. Dist. LEXIS 165097, 2021 WL 3891060, at *9–11 (E.D. Ark. Aug. 31, 2021) (more searching inquiry required at Step Five); *Montoya v. SSA*, No. 3:18-CV-00091-JTK, 2019 U.S. Dist. LEXIS 99311, 2019 WL 2482719 (E.D. Ark. June 13, 2019) (a VE's experience alone does not resolve conflict); *see also Stanton v. Berryhill*, 899 F.3d 555 (8th Cir. 2018) (the VE's response that his "experience" resolved the conflict was insufficient).

[5] *Jones-Brinkley v. Comm'r. of Soc. Sec. Admin.*, No. 3:20-CV-00058-JTK, 2021 U.S. Dist. LEXIS 20302, 2021 WL 371689, at *3 (E.D. Ark. Feb. 3, 2020) (ALJ recognized conflict, and the VE properly relied upon judgment and experience); *Mobley v. Saul*, No. 3:19-CV-00198-JTR, 2020 U.S. Dist. LEXIS, 2020 WL 4353653, at *7 (E.D. Ark. July 29, 2020) (ALJ asked VE about conflict, and VE testimony was sufficient).

individuals with appropriate jobs, observing those jobs, training and supervising those jobs, and conducting market research. The VE did not fail to acknowledge the conflict and rely generally on her experience. The ALJ acknowledged the resolution of the conflict in his decision. (Tr. at 32). Accordingly, this Court is satisfied that the ALJ sufficiently resolved any conflict between the DOT and the overhead-reaching limitation.

### 2. RFC

Nicholas also argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Nicholas asserts that due to his physical medical impairments, he cannot stand and walk for six hours out of an eight-hour workday or perform frequent fingering and handling.

A claimant bears the burden of establishing his RFC, which is the most he can do despite his limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ must review all the relevant medical and other evidence in the record when determining a claimant's RFC but is not required to include limitations that are not supported by the evidence. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Ultimately, the RFC finding "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

Nicholas was hospitalized in May 2020 after having a heart attack. Cardiac catheterization revealed multivessel CAD, and he underwent a quadruple bypass. (Tr. at 511). At a follow-up appointment in July 2020, he reported shortness of breath at rest and with ambulation as well as chest pain. (Tr. at 432). He presented to the emergency room in August 2020 with chest pain, dizziness, and palpitations. Nicholas reported that "over the past few days he had been working out in the hot sun and feeling fatigued" and "moved a lot of furniture at his house by himself." (Tr. at 605). In October 2020, Nicholas again reported chest pain, shortness of breath, palpitations, and dizziness. (Tr. at 419). However, the ALJ correctly noted that from August 2020 through May 2022, many of Nicholas's examinations were normal, showing a regular heart rate and rhythm, no evidence of edema, and no acute cardiopulmonary abnormalities. (Tr. at 24, 423, 440, 530, 732, 741, 860, 865, 976, 1285, 1373). In July 2021, Nicholas had nonspecific chest pain and shortness of breath that was "definitely better than before," and he was "functionally active with no limitation." (Tr. at 860–61).

In January 2021, Nicholas's primary care physician, Dr. Michael Lyerly, ordered an EMG/NCV study of Nicholas's lower extremities due to low back pain, numbness and tingling in his feet, unsteady gait, pain in the legs, and frequent falls. (Tr. at 1023). The study was unremarkable. *Id*. On October 25, 2021, Nicholas complained of numbness in his left hand, asserting that he could not feel anything and could not hold a glass. (Tr. at 1117). He was referred to neurology, and in December 2021, he reported that he could walk less than a minute before needing to stop due to pain and that he could stand about ten minutes before needing to rest. (Tr. at 1194). Nicholas stated that he developed numbness,

tingling, and pain in his left hand—specifically the palm, left pinky, and ring finger—after a severe reaction to a COVID-19 antibody infusion in October. (Tr. at 1194). An exam revealed weakness in his left handgrip; a positive Phalen test on the left; weakness in his left wrist flexor and extensor; muscle spasms in the left trapezius; and tenderness to palpation in the lower cervical spine, left trapezius, and left shoulder blade. (Tr. at 1197). An MRI of his cervical spine showed small disc herniation at C3-C4, C5-C6, and C6-C7 without canal or foraminal stenosis. (Tr. at 1232). In February 2022, Nicholas had an EMG/NCV of his bilateral upper extremities. Results showed mild to moderate CTS on his left side and moderate CTS on his right side. (Tr. at 1228).

On May 28, 2022, Nicholas was taken by ambulance to the emergency room for severe back pain, difficulty walking, and incontinence. (Tr. at 1289). An MRI of his lumbar spine showed mild to moderate degenerative changes, including mild facet arthropathy at L3-L4, L4-L5, and L5-S1; moderate spinal canal stenosis at L4-L5; mild spinal canal stenosis at L5-S1; and mild bilateral neural foraminal stenoses at L4-L5. (Tr. at 1299). There was no evidence of cauda equina, and Nicholas was discharged with muscle relaxers and anti-inflammatories. (Tr. at 1291). Nicholas returned to the emergency room on June 1, 2022, complaining of worsening low back pain, weakness in his left leg, and incontinence. (Tr. at 1334). An examination revealed tenderness in his lumbar, decreased range of motion, and a positive straight leg raise on both sides. (Tr. at 1337). An MRI again showed disc herniation at L4-L5 and L5-S1 with no canal stenosis. (Tr. at 1341). Nicholas was discharged with a steroid pack to follow up with his primary care physician; surgery was not recommended. (Tr. at 1337–38).

Nicholas testified that he "had trouble every day doing things." (Tr. at 51). He described his day as "constant up and down" from the time he got up in the morning—alternating walking and sitting—trying not to exert himself too much. *Id*. He had difficulty cleaning himself after toileting. (Tr. at 52). He did "very little" grocery shopping, avoiding big stores. (Tr. at 61). Nicholas said that he tried to help his father with yard work once or twice a month, but he could only use the weed eater for five minutes due to lack of grip and would trim a small flowerbed area with garden shears for five minutes. (Tr. at 64–65). He did not take prescription pain killers or muscle relaxers, only taking the medications he absolutely had to have. (Tr. at 71). Nicholas had trouble opening jars and soda bottles. (Tr. at 77). He could write with a pen or use a keyboard for approximately ten minutes before his hands would cramp. (Tr. at 78). He acknowledged that he was able to change a light switch for his dad that took five to ten minutes. (Tr. at 84). In a function report, Nicholas stated that he was often out of breath; fatigued easily; had to alternate between sitting and standing every fifteen to thirty minutes; used a stool in the shower when necessary; prepared his own meals using a microwave; did laundry; went outside daily; and drove a vehicle. (Tr. at 380). He used hot showers and rest to treat his pain. (Tr. at 370).

Dr. Lyerly filled out a medical source statement on December 23, 2020. (Tr. at 841). He stated that Nicholas had weakness due to a stroke and heart condition; an inability to sit, stand, or walk for any length of time due to chronic lumbar, thoracic, and cervical radiculopathy; and frequent episodes of dizziness due to Meniere's disease, which also caused an unsteady gait. (Tr. at 839). Dr. Lyerly stated that Nicholas could occasionally lift less than ten pounds, that he had the ability to stand and walk for less than two hours in

9

an eight-hour workday, that he had the ability to sit for less than two hours in an eight-hour workday, and that his maximum ability to sit without a break was fifteen minutes. Nicholas would need to elevate his feet, to have frequent rest periods, to have longer than normal breaks, and to shift at will from sitting or standing/walking. (Tr. at 840). He was unable to reach in all directions, including overhead, unable to finger (fine manipulation), and occasionally handle (gross manipulation). He would miss work more than three days a month. (Tr. at 841). Dr. Lyerly noted that Nicholas was constantly repositioning himself, walked with a limp, became short of breath on the walk to the exam room, and had frequent episodes of chest pain, fatigue, and weakness. Dr. Lyerly also completed paperwork in July 2021 for Nicholas to obtain a special license plate, indicating that his chronic heart disease resulted in his inability to walk one hundred feet without stopping to rest. (Tr. at 957). The ALJ found Dr. Lyerly's opinion unpersuasive because "the longitudinal treatment record and the claimant's reported activities of daily living refute the extreme limitations imposed." (Tr. at 30).

A consultative examiner, Dr. Kenneth Holder, also provided an opinion on Nicholas's limitations. (Tr. at 897). Dr. Holder noted limited range of motion in Nicholas's cervical spine, a decreased sensation in his bilateral lower extremities, a bilateral limp, and compensatory posture. (Tr. at 900). Nicholas was unable to tandem walk, unable to walk on heels and toes, unable to rise from a squatting position, and could hold a pen and write for "short periods only." *Id*. He demonstrated slightly reduced strength in his upper and lower extremities (4/5), full grip strength, no muscle spasms, and normal straight leg raise. He could touch fingertips to palm, oppose thumb to fingers, pick up a coin, and stand and

walk without assistance. Dr. Holder diagnosed Nicholas with CAD, chronic back and neck pain with neuropathy, and Meniere's disease. (Tr. at 901). He found moderate to severe limitations in exertional exercise; moderate limitations to lifting, carrying, bending, twisting, stooping, and squatting; and moderate to severe limitations to climbing, operating machinery, and balancing. *Id*. The ALJ found Dr. Holder's opinion partially persuasive, consistent with and supported by the medical evidence, but not providing "full, detailed function-by-function assessments of the claimant's work-related limitations." (Tr. at 30).

The ALJ was persuaded by the opinion of the physical medical consultant at reconsideration.  (Tr. at 29, 159). The consultant found Nicholas could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; and avoid all exposure to hazards. (Tr. at 172). The ALJ found this opinion "well supported by the fully developed record." (Tr. at 29).

Nicholas argues that, due to his physical impairments, the ALJ erred in finding that he could perform the prolonged standing and walking requirements of light work and frequent handling or fingering. Although Nicholas points to evidence in the record supporting his position, the Court will not reverse the ALJ simply because evidence in the record could support an opposite conclusion. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" *Milam v. Colvin*, 794 F.3d 978, 983

(8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)). Even where some evidence in the record supports a more restrictive RFC finding, the Court will not reverse where the ALJ's decision is within the "available zone of choice." *See Twyford*, 929 F.3d at 518 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006)).

Substantial evidence supports the ALJ's RFC determination. The ALJ considered all the medical and other relevant evidence of record in making his RFC determination, including Nicholas's description of his limitations and his activities of daily living, observations of treating and examining medical providers, and the opinion of administrative medical consultants. The ALJ noted conservative treatment, such as muscle relaxers, anti-inflammatories, and steroids. He considered that Nicholas treated his pain with hot showers and rest. The ALJ pointed to treatment records showing normal examinations and controlled symptoms. The ALJ found that the evidence in the record, including Nicholas's daily activities, did not support the severity of disability he claimed. The ALJ crafted an RFC accounting for all Nicholas's impairments—severe and non-severe—that was consistent with limitations outlined by medical consultants and consistent with evidence in the record. In sum, the ALJ ultimately determined that although Nicholas had physical limitations, those limitations were sufficiently accounted for by limiting him to light work with frequent fingering and handling, and substantial evidence in the record supports that finding. That the ALJ did

not draw the same conclusions as Nicholas does not demonstrate a lack of substantial evidence.

## IV. <u>Conclusion</u>:

The Court concludes that the ALJ applied proper legal standards and that substantial evidence on the record as a whole supports the ALJ's decision. The finding that Nicholas was not disabled is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 17th day of September 2024.

_____
UNITED STATES MAGISTRATE JUDGE